Filed 8/3/26

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>ROCKY KARL KEENE,<br><br>    Defendant and Appellant. | A172821<br><br>(Humboldt County<br>Super. Ct. No. CR2300716B) |

Appellant and defendant Rocky Karl Keene (Keene) entered an open guilty plea to possession of methamphetamine with a firearm (count 1), possession for sale of fentanyl (count 2), possession for sale of methamphetamine (count 3), and being a felon in possession of a firearm (count 4).  On count 1, the trial court found that aggravating circumstances existed and imposed the upper term.  The court then imposed consecutive sentences on counts 2 and 4 and a concurrent sentence on count 3.  As a result, Keene was sentenced to 11 years and 4 months in prison.

On appeal, Keene contends that the sentences on counts 3 and 4 must be stayed under Penal Code section 654[1] because they arise out of the same acts as count 1:  possession of a firearm and possession of methamphetamine.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part A of the Discussion.

[1] All statutory references are to the Penal Code unless otherwise specified.

1

Keene also contends that the trial court's imposition of the upper term for count 1 violated section 1170 because Keene did not stipulate to any aggravating circumstances and they were not tried to a jury. We agree that Keene's sentence as to counts 3 and 4 should have been stayed. However, we find the court's consideration of aggravating circumstances in violation of section 1170 harmless beyond a reasonable doubt. We therefore affirm in part, reverse in part, and remand for resentencing consistent with this opinion.

## I. BACKGROUND

### A. Facts

On March 5, 2023, sheriff deputies searched Keene's home while he was on Post Release Community Supervision (PRCS) for a 2021 felony conviction. During the search, deputies found, among other things, methamphetamine, fentanyl, a Ruger .38 Special Revolver (.38), and a Springfield 1911-A1 .45 semi-automatic pistol (.45).

### B. Procedural History

A March 8, 2023 felony complaint charged Keene with possession of a controlled substance – methamphetamine – with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 1), possession for sale of a controlled substance – fentanyl (*id.*, § 11351; count 2), possession for sale of a controlled substance – methamphetamine (*id.*, § 11378; count 3), and possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count 4.) In counts 1 and 4, the complaint alleged that Keene possessed the same firearm, the .38. It did *not* charge Keene with possession of the .45. In count 4, the complaint alleged that Keene had previously been convicted of four felonies.

On March 10, 2023, the probation officer filed a report recommending that the trial court deny supervised release. In its description of the

underlying matter, the report stated the PRCS search located "two stolen firearms." Three days later, the court held a hearing in which it denied supervised release. In doing so, the court relied in part on the discovery of two stolen firearms at Keene's home.

At a subsequent hearing held that month, Keene waived his right to a preliminary hearing. On March 27, 2023, the prosecutor filed a superseding information. Like the felony complaint, the information charged Keene with possessing the same firearm in counts 1 and 4, the .38, but did not charge him with possessing the .45. The information also identified Keene's four prior felony convictions in count 4. Finally, the information alleged the following special allegations: (1) Keene had a prior conviction for a serious or violent felony (§ 667, subd. (b)), and (2) aggravating circumstances existed because Keene "was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed; the manner in which the crime was carried out indicates planning, sophistication, or professionalism; the crime involved a large quantity of contraband; [Keene] has engaged in violent conduct th[at] indicates a serious danger to society; [Keene's] prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; [and] [Keene] has served a prior term in prison or county jail under . . . section 1170, subdivision (h)." (§ 1170, subd. (b)(2).)

On October 30, 2024, Keene entered an open plea, pleading guilty to all four counts and the prior strike conviction. He, however, reserved the right to move to dismiss that prior strike under *People v. Romero* (1994) 8 Cal.4th 728 (*Romero*). The plea form did not mention any plea as to the alleged circumstances in aggravation. The form also stated that the prosecutor would state the factual basis for the plea on the record.

3

At the hearing on Keene's plea, the prosecutor informed the trial court that Keene was "pleading to the sheet in [the] case ending 716B, pleading as charged. That's open." The court explained to Keene: "You would be pleading to the sheet, so in case 716B, you would be pleading to Counts 1, 2, 3, and 4 and admitting that you did suffer a prior strike conviction. As to your maximum potential exposure – so the maximum term you are facing [as a] result of this plea is 12 years, 8 months."

After providing additional advisements to Keene, the trial court asked for the plea's factual basis. In response, the prosecutor stated: "Regarding the defendant's plea, on or about March 5, 2023, within the county of Humboldt, deputies from the sheriff's office conducted a PRCS search. The defendant, at his residence, he was present there in his bedroom. In the bedroom, deputies located several packages of narcotics including aggregate almost four ounces of methamphetamine and approximately an ounce of fentanyl. [¶] Based on the circumstances in the room, including multiple packages, and multiple items, they were possessed for the purpose of sales. It was well above a usable amount. [¶] In the same room and in a dresser, they located a 45-caliber pistol. It was readily available for offensive or defensive use. Mr. Keene [h]as also previously been convicted of a number of felonies making him unable to own or possess firearms. Those are located – or some of those are alleged on the complaint under [c]ount 4 including a prior to [section] 29800 and the defendant, which he just admitted, one was a strike robbery . . . with a conviction date of November 14th, 2017."

The prosecutor did not, however, mention the .38 alleged in the complaint and information or state that Keene was charged with possessing *two* different firearms in counts 1 and 4. Following the prosecutor's recitation of the factual basis for the plea, the trial court asked defense

4

counsel if she had "any comments." Defense counsel responded she did not. The court then found a factual basis for Keene's plea.

The prosecutor next raised the topic of aggravating circumstances. The prosecutor told the trial court that "[t]here would need to be a stipulation from [Keene] or the [c]ourt [could] find aggravating factors apply that the [c]ourt can find . . . at sentencing, but it is more expeditious to have a stipulation." The prosecutor offered Keene's "prior criminal history as well as him being on [PRCS] at the time of this offense" as aggravating circumstances that would allow the court to sentence Keene to the upper term. The court asked defense counsel if there would be a stipulation or if she was requesting the issue be addressed at sentencing. Defense counsel confirmed that she wished to defer the issue to sentencing but noted that she did not believe "for those two particular aggravating factors that he needs to stipulate to that. The [c]ourt can take judicial notice of its own files." The prosecutor agreed.

Following this exchange, the trial court stated it would address the aggravating factors at sentencing. It, however, noted that "from reviewing the [c]ourt's files and taking notes of the [c]ourt's files, it does appear that those circumstances in aggravation are true. And so . . . I'll make that finding at this time." The court then took and accepted Keene's guilty plea as to all four counts and the prior strike conviction.

In February 2025, Keene filed his *Romero* motion. In the opposition, the prosecutor noted that the PRCS search had resulted in the discovery of "2 loaded pistols." The prosecutor did not, however, state that Keene had been charged with possession of both firearms.

On February 24, 2025, the trial court held a sentencing hearing. Nearly two months earlier, the probation department served a presentence

5

report on the court, the prosecutor, and defense counsel. The report described Keene's criminal history – disclosing prior convictions in 2000, 2001, 2006, 2007, 2012, 2013, 2014, 2017, 2018, and 2021. The report also disclosed Keene's prior parole violations, probation violations, probation revocations, and a mandatory supervision revocation. In the section on Keene's performance under community supervision, the report noted that Keene violated probation twice "for continued drug use, treatment program failure, and a new law violation," resulting in its revocation. The report also stated that Keene "sustained four violations of his Mandatory Supervision for absconding supervision, failure to report as directed, treatment program failure, and continued drug use; it was subsequently revoked and his remaining sentence imposed."

The presentence report identified the following circumstances in aggravation: (1) "[Keene] has an extensive criminal history that lists 12 prior misdemeanor convictions, and 11 prior felony convictions. Of those prior felony convictions, two were for serious and violent felonies"; (2) "[Keene] has served prior prison terms"; (3) "[Keene] was on PRCS when the offenses in the present matter were committed"; and (4) "[Keene's] prior performance on supervision has been less than satisfactory." It also stated that there were no mitigating circumstances. Finally, the report recommended a sentence of 12 years 8 months, comprised of the upper term of eight years for count 1, two years for count 2, and one year four months each for counts 3 and 4.

At oral argument on the *Romero* motion, the prosecutor stated that "[t]he conduct here involves multiple firearms and the sale of multiple controlled substances." The trial court denied the motion, citing Keene's "numerous prior felony convictions, prior convictions of robbery by force out of Indiana, . . . [and] the current charges before the [c]ourt, which involve [the]

6

possession of multiple firearms as well as a great deal of controlled substances that were packaged for sales . . . ."

As for sentencing, defense counsel argued for the middle term as to count 1, contending "I don't believe there's anything intrinsic in the [prior] offenses themselves that aggravate." The prosecutor argued for the upper term based on Keene's "prior criminal history, [current] supervision, [and convictions] of more offenses while out on bond."

The trial court found the following aggravating factors: (1) Keene's "12 prior misdemeanor convictions and 11 prior felony convictions," two of which were serious or violent felonies; (2) Keene's "prior prison terms"; (3) that Keene "was on [PRCS] when the offenses in the present matter were committed"; and (4) Keene's "prior performance on supervision has been less than satisfactory." As to Keene's prior performance, the court observed that he committed "multiple violations of probation for continued drug use, treatment program failure and new law violations" and "sustained four violations on mandatory supervision for absconding, failing to report as directed, treatment program failure and continued drug use." The court further noted that a grant of "mandatory supervision was revoked and the remaining sentence was imposed." Finally, the court expressed concern that Keene "was armed with two stolen firearms."

On count 1, the trial court sentenced Keene to the upper "term of eight years," incorrectly stating that Keene "ha[d] stipulated . . . to the aggravating circumstances previously." On count 2, the court sentenced Keene to "one-third of the middle term of six years for a total of two years," consecutive to count 1. On count 3, the court sentenced Keene to four years, "concurrent with all other time that's been imposed." On count 4, the court sentenced Keene to "one-third of the middle term of four years for a total of one year

and four months," consecutive "to the time previously imposed." In total, Keene was sentenced to 11 years 4 months in state prison. Keene timely appealed.

## II. **DISCUSSION**

A. Section 654

Keene contends that his sentences on counts 3 and 4 should have been stayed under section 654. We agree.

"An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) We undertake a two-step inquiry to determine whether section 654 authorizes multiple punishment against a defendant "because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) First, we "consider if the different crimes were completed by a 'single physical act.' " (*Ibid.*, quoting *People v. Jones* (2012) 54 Cal.4th 350, 358 (*Jones*).) "If so, the defendant may not be punished more than once for that act." (*Corpening*, at p. 311.) If the "case involves more than a single act – i.e., a course of conduct – . . . we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*Ibid.*, quoting *Jones*, at p. 359.)

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the . . . court broad latitude in making this determination. [Citation.] Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)

This standard equally applies to a court's "implied finding that a defendant had separate intents and objectives for different offenses." (*In re L.J.* (2021) 72 Cal.App.5th 37, 43.) "We review the . . . court's determination in the light most favorable to the respondent and presume the existence of every fact the . . . court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) But "[w]hen the facts are undisputed, the application of section 654 raises a question of law we review de novo." (*People v. Washington* (2021) 61 Cal.App.5th 776, 795.)

As a threshold matter, the parties disagree over the applicable standard of review. Keene argues for de novo review because "the prosecutor's oral recitation of a factual basis was undisputed." The People argue for the substantial evidence standard because "the trial court's imposition of consecutive sentences is an implied finding that his convictions were based on possessing both firearms." We conclude that the substantial evidence standard applies because there is a factual dispute as to whether Keene was charged with possessing both firearms and, consequently, whether he pled guilty to possessing both firearms.

The People concede that Keene's concurrent sentence on count 3 must be stayed under section 654 because his "convictions on counts 1 and 3 arose out of the same conduct: possessing methamphetamine." We agree and therefore consider only whether his consecutive sentence on count 4 should be stayed as well. Keene argues section 654 bars that sentence because counts 1 and 4 in both the felony complaint and information alleged possession of the same firearm, the .38. Acknowledging that the prosecutor did identify the .45 when stating the factual basis for the plea, Keene argues that the prosecutor again only identified one firearm as the factual basis for both counts. Therefore, Keene contends that he only admitted to possessing a single

9

firearm based on either the information or the prosecutor's factual basis. The People counter that the trial court implicitly found that Keene pled guilty to possessing two firearms and that the record supports that finding. As a result, the imposition of separate sentences for counts 1 and 4 was proper because " 'simultaneous possession of different items of contraband' are separate acts" for purposes of section 654. (*Jones*, *supra*, 54 Cal.4th at p. 358, quoting *In re Hayes* (1969) 70 Cal.2d 604, 612 (dis. opn. of Traynor, C. J.).) We agree with Keene because there was no evidence to support the court's implicit finding that the prosecution charged and Keene pled guilty to possessing two *different* firearms in counts 1 and 4.

Keene entered an open plea, meaning that he " 'ple[d] unconditionally, admitting all charges.' " (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4.) At the time of the plea, the information only alleged that Keene possessed one firearm, the .38. It did not mention the .45. Although the supervised release report did state that "two stolen firearms" were located in the PRCS search and the trial court did cite this fact in denying supervised release, the report did not provide the factual basis for the plea. In any event, the information, filed after the supervised release report, was consistent with the felony complaint – which only alleged that Keene possessed a single firearm. (See *People v. Saez* (2015) 237 Cal.App.4th 1177, 1198, fn. 18 [later-filed information superseded felony complaint].) Thus, we cannot conclude that the prosecutor intended to charge Keene with felony possession of two separate firearms based on that report.

The plea hearing does not suggest otherwise. Although the prosecutor identified the .45 as the factual basis for Keene's plea, he did not mention the .38. In other words, the prosecutor did not state that Keene possessed two separate firearms as the factual basis for his plea. Thus, we cannot conclude

that Keene admitted to the possession of two different firearms.  Absent such an admission, we cannot conclude that Keene pled guilty to felony counts for the possession of two *different* firearms.

Despite this, the People argue that Keene "has cited no authority holding that a trial court's section 654 decisionmaking is limited to factual language in the information or the stated factual basis for the plea."  Relying on *People v. Rosenberg* (1963) 212 Cal.App.2d 773, 777, the People contend that the court was entitled to rely on the presentence report to support its sentencing decision.  But even if that report may, in theory, provide the basis for an open plea, it was filed *after* the court accepted Keene's plea.  Thus, the report cannot establish that Keene, at the time of his plea, admitted to possessing more than one firearm.

As the People note, in *People v. Hoffard* (1995) 10 Cal.4th 1170, 1184, the California Supreme Court held that section 1192.5, subdivision (b)'s factual basis requirement does not apply to open pleas.  But as part of the plea agreement, the prosecutor agreed to provide a factual basis for Keene's plea.  In any event, absent a factual basis for the plea, we are left only with the allegations in the information as evidence of what Keene was admitting to in his open plea.  And that information establishes that Keene was only pleading guilty to the possession of *one* firearm.

The People also argue that "[t]he specific caliber of the firearm is not an 'essential' element of either" count 1 or count 4.  That is true.  But the issue here is whether Keene pled guilty and therefore admitted to the possession of two separate firearms.  As to that issue, the record only supports the conclusion that Keene admitted to the possession of one firearm and not two different firearms.

11

Finally, the People attempt to characterize the identification of a single firearm in the accusatory pleadings as a pleading defect that Keene waived by pleading guilty. We are unpersuaded. The listing of one firearm in the accusatory pleadings is not a defect in the pleading because the prosecutor, in its discretion, could have chosen to charge Keene with possession of only one firearm. (See *People v. Lucas* (1995) 12 Cal.4th 415, 477 ["Prosecutors have broad discretion to decide whom to charge, and for what crime"].) Indeed, that the prosecutor identified the same firearm in both the complaint and information suggests that the prosecutor did, in fact, exercise his discretion in this manner. Moreover, at the plea hearing, the prosecutor told the trial court that Keene was "pleading *as charged*." (Italics added.) And in his recitation of the factual basis for Keene's plea, the prosecutor identified only a single firearm. Although the prosecutor did identify a different firearm than the firearm identified in the information, Keene could reasonably conclude based on the information and plea hearing that he was only admitting to the possession of one firearm. Indeed, this may have been why Keene agreed to an open plea. That the prosecutor made a mistake in the accusatory pleadings does not render those pleadings defective.

Accordingly, we find that Keene only admitted to the possession of one firearm when he plead guilty to the sheet. As a result, Keene's sentence for count 4 must be stayed under section 654 because the possession of that firearm was also the basis for count 1.

B. <u>Imposition of the Upper Term on Count 1</u>

The Fifth and Sixth Amendments to the United States Constitution require that " 'any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' " (*People v.*

*Wiley* (2025) 17 Cal.5th 1069, 1078 (*Wiley*), quoting *Cunningham v. California* (2007) 549 U.S. 270, 281.) "Section 1170(b)(2) similarly provides that the trial court may impose a sentence exceeding the middle term only when circumstances in aggravation of the crime justify imposition of an upper term sentence, and 'the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt,' at a jury or court trial." (*Wiley*, at p. 1078.) In *Wiley*, our high court held "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Id.* at p. 1086.) Here, the People concede that "[t]he court's reliance on aggravating factors that were not proven . . . beyond a reasonable doubt was error under *Wiley*." We must therefore determine whether that error was prejudicial under *Chapman v. California* (1967) 386 U.S. 18, 24 *(Chapman)*. (*People v. Lynch* (2024) 16 Cal.5th 730, 742–743 (*Lynch*).) We conclude that it was not.

A sentence that violates section 1170, subdivision (b) "must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the [trial] court relied to conclude the upper term was justified . . . ." (*Lynch, supra*, 16 Cal.5th at p. 743 [applying *Chapman*].) "Lack of a jury trial is not harmless under *Chapman* if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*Wiley, supra*, 17 Cal.5th at p. 1087, quoting *Neder v. United States* (1999) 527 U.S. 1, 19.) The inquiry, however, is not whether the evidence was sufficient to support the aggravating factor. *(Wiley*, at p. 1090) "Instead, we must ask, 'whether any rational fact finder

13

could have come to the *opposite* conclusion.'" (*Ibid.*, quoting *People v. Mil* (2012) 53 Cal.4th 400, 418.)

Keene was sentenced to the upper term for count 1 based on three aggravating factors. First, the trial court found that Keene suffered numerous prior convictions. (Cal. Rules of Court, rule 4.421(b)(2).)[2] Second, the court found that Keene was on PRCS "when [the crime was] committed." (Rule 4.421(b)(4).) Finally, the court found that Keene's "prior performance on supervision ha[d] been less than satisfactory." (Rule 4.421(b)(5).) Keene acknowledges that the court's finding that Keene was on PRCS at the time of the present crime was "likely . . . harmless beyond a reasonable doubt" and we agree. Instead, Keene contends that the court's findings of the other two aggravating factors were not harmless beyond a reasonable doubt. We disagree.

### 1. Numerous Prior Convictions

The trial court found that Keene suffered numerous prior convictions at both the plea and sentencing hearings. As part of his guilty plea, Keene admitted to the allegations in count 4, which alleged that Keene was previously convicted of four felonies committed on three different dates: August 15, 2006 (two felonies), November 14, 2017 (one felony), and August 31, 2021 (one felony). And based on the presentence report, the court found "Mr. Keene ha[d] 12 prior misdemeanor convictions and 11 prior felony convictions," two of which were serious or violent felonies. Keene does not dispute this finding. Based on Keene's undisputed criminal history, we find that the court's finding that Keene's prior convictions were "numerous" is harmless beyond a reasonable doubt. (Rule 4.421(b)(2).)

---

[2] All future rule references are to the California Rules of Court.

14

Assuming a finding of numerosity must be made by a jury or through a stipulation, we conclude that no rational fact finder could have found that Keene's prior convictions were not numerous. According to Keene, "it is unclear how many prior convictions appellant suffered on separate occasions." Not so. The presentence report lists each of Keene's prior convictions by date and states when multiple convictions occurred on the same date.

Keene also contends that "the probation report in this case was filed with the [trial] court after the . . . court had already made its determination as to this aggravating circumstance." We disagree. Although the court did comment on the aggravating factors at the plea hearing, there is nothing to suggest that it was making any findings at that time. Indeed, the court appeared to defer the issue of aggravating factors for the sentencing hearing at Keene's request. More importantly, the court made additional findings on the numerosity factor at the sentencing hearing, superseding any findings that the court may have made at the plea hearing.

As the People correctly observe, the number of Keene's prior convictions far exceeds the number of convictions upheld as numerous in the past. (*People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [three prior convictions]; *People v. Black* (2007) 41 Cal.4th 799, 818–820 [overruled on other grounds by *Wiley*, *supra*, 17 Cal.5th at p. 1084] [three misdemeanors and two felonies].) We further agree with the People that *People v. Wright* (2025) 113 Cal.App.5th 832 is distinguishable. In *Wright*, 11 out of the 13 convictions suffered by the defendant "arose from a single case . . . ." (*Id.* at p. 847.) Wright contended "he suffered only *three* convictions from separate episodes." (*Ibid*.) As a result, the Court of Appeal concluded: "Three robberies in the course of 49 years of life may strike some jurors as an obviously 'numerous'

15

number of convictions, but we are unsure 12 people unanimously would agree with this evaluation beyond a reasonable doubt." (*Id.* at p. 848.) The same is not true here. As the People point out, "[o]f appellant's 11 prior felony convictions, only two instances involve multiple counts sharing a single conviction date. . . . The remaining seven felony convictions each arose from separate and independent criminal episodes spanning from November 2001 to August 2021." In other words, Keene, unlike the defendant in *Wright*, committed felonies on at least *nine* different occasions over a roughly 21-year period immediately preceding his current offenses. And this does not even account for the separate occasions where Keene committed misdemeanors. Given the sheer number of unrelated convictions suffered by Keene immediately before committing the offenses in this case, we do not see how any reasonable jury could find that his prior convictions were not numerous. Accordingly, we find the trial court's error in making this finding harmless beyond a reasonable doubt.

2. Unsatisfactory Performance on Supervised Release

At the sentencing hearing, the trial court observed that "in looking at [Keene's] prior community supervision performance, there's been multiple violations of probation for continued drug use, treatment program failure and new law violations." The court further noted that Keene "sustained four violations of mandatory supervision for absconding, failing to report as directed, treatment program failure and continued drug use." Finally, the court observed that Keene had one grant of mandatory supervision revoked. Keene does not dispute the accuracy of these observations by the court based on the presentence report.

Keene also does not appear to dispute that these findings, if supported by the evidence in the record, establish that his prior performance on

16

supervised release was unsatisfactory. Instead, he contends that the trial court's finding that he performed unsatisfactorily on supervised release was not harmless beyond a reasonable doubt because he never had the opportunity to address that performance. According to Keene, the court only raised the issue right before it imposed the sentence, depriving him of the opportunity to address it. He relies on *Wiley* to argue that he was precluded from presenting to a jury about his " 'overall performance' " on probation for his prior offenses. Keene argues that "[t]he court's unilateral fact finding at sentencing regarding an aggravating circumstance not addressed by the parties does not lend itself to a finding that the error was harmless beyond a reasonable doubt." But the presentence report, which defense counsel had for almost two months before the sentencing hearing, identified Keene's prior performance on supervised release as an aggravating factor. Thus, counsel had ample time to review the report and should not have been surprised by the court's reliance on that factor. At a minimum, counsel could have requested a continuance to address it but did not do so. Thus, we cannot conclude that Keene was deprived of any opportunity to address this aggravating factor.

We therefore find that no rational fact finder could have concluded that Keene's prior performance on supervised release was satisfactory based on the record before us. Keene contends that the record does not show more than one prior instance of unsatisfactory performance. But the presentence report identifies *nine* different cases where Keene committed probation violations, parole violations, or PRCS violations. And in five of those cases, the trial court either revoked Keene's probation, parole, or mandatory supervision or unsatisfactorily discharged Keene from probation. On this

17

record, no reasonable jury could have found that Keene's prior performance on supervised release was satisfactory.

Finally, *Wiley* is distinguishable. In *Wiley*, the record showed that the defendant's performance on supervised release was mixed. Indeed, the probation officer listed that performance as "*both* an aggravating factor *and* a mitigating factor." (*Wiley*, *supra*, 17 Cal.5th at p. 1091.) By contrast, the probation officer here did not equivocate about Keene's poor performance on supervised release and identified *no* circumstances in mitigation. Although the trial court did find that Keene's willingness to participate in future treatment was a mitigating circumstance, that finding has no bearing on his *prior* performance on supervision.

Accordingly, based solely on the record before us, we conclude beyond a reasonable doubt that a jury would have found Keene's prior performance on supervision unsatisfactory.

## III. <u>DISPOSITION</u>

We reverse and remand for resentencing with directions to stay Keene's sentence as to counts 3 and 4 pursuant to section 654. In all other respects, the judgment is affirmed.

CHOU, J.


WE CONCUR.

JACKSON, P. J.
SIMONS, J.

18

*People v. Keene* (A172821)

Trial Court:        Superior Court of the County of Humboldt

Trial Judge:        Steven M. Steward

Counsel:        Michael H. Casey, under appointment by the Court of Appeal, for Defendant and Appellant.

                Rob Bonta, Attorney General, Charles C. Ragland and Jeffrey M. Laurence, Assistant Attorneys General, Bridget A. Billeter and Tara S. Mahesh, Deputy Attorneys General, for Plaintiff and Respondent.